Good morning, Honorable Justices, and may it please the Court. I'm Martin Shives. I represent Orlando Perez and Pace Integrted Systems. And from our perspective, I'd like to reserve two minutes for rebuttal, if needed, please. This case presents a very simple legal issue that we believe has been resolved by this Court in the H.S. Services case, and that issue is simply when an insurer, such as Pace or Perez, is sued for alleged defamation in the act of competing with persons that happen to have been former employees, does the employment-related practices exclusion bar an obligation on the part of an insurance carrier to defend and indemnify that insured simply because the underlying plaintiffs were former employees? This Court, analyzing policy language virtually identical to that at issue in this case, specifically held the exclusion was inapplicable because the statements were not employment-related. Here, Mr. Perez's insurance company, RLI, was presented with two complaints initially. Those complaints, followed by the same lawyer, were almost identical. Based on the allegations of the complaints, which are the main document used for evaluating RLI's duty to defend, we know that for several years, Pace employed two people, Mr. Stairs and Mr. Gakpedak, and eventually those people were discharged by Pace for improper conduct. Their employment terminated on February 12, 2003. The original complaints were filed in July 2003, and amended complaints were filed in September 2003. Claim was tendered to RLI in September of 2003, with only the complaints being presented to RLI. The underlying cases were ongoing and being defended by separate counsel, not the insurance counsel, which is myself. The sixth cause of action, labeled defamation in all four versions of the complaint, two per party, alleged that, quote, commencing on or about 2003 and continuing to date, Pace and Perez have communicated false and defamatory statements to third parties concerning each of the underlying plaintiffs. The false statements included that each of the plaintiffs, depending on which pleading you're looking at, essentially was a thief or had misappropriated funds from Pace, that he was incompetent while employed at Pace, and he was a drug abuser. Essentially the same comments were presented in the other complaints, and as stated on page three of each complaint, following Pace's wrongful termination of Stairs or Gokbidok, Perez defamed Stairs and Gokbidok to third parties, including industry associates and competitors. The language is in the complaints. Based on this information, RLI denied coverage by letter dated October 22 of 2003. Further information was provided to RLI following its denial, including discovery responses prepared by the plaintiffs concerning the allegedly defamatory statements. Those responses indicated that at least March and June of 2003, after the termination from employment and after the underlying plaintiffs had started their new business, known as Integrated Automation Systems, Mr. Perez allegedly defamed both with statements to third parties that were potential customers of Pace and IAS. These statements were made in the context of being competitors. They were not in the context of handling any sort of internal employment practices or any response to employment issues. All of this information was presented to RLI, which again denied this claim. These allegations make clear that Stairs and Gokbidok were asserting claims for defamation that were unrelated to their employment. This is exactly the issue this court addressed in the HS Services v. Nationwide case, which we briefed in detail so I won't repeat it here, and which held that in the context of the acts of the allegedly defaming party was, I'm sorry, the context of the acts of the allegedly defaming party was what should be considered in evaluating a duty to defend. Under the circumstances of HS Services, in which Nationwide sought to avoid its obligations to its insured, this court held the statements were not related to employment. And here we believe the result is exactly the same. Here, however, without any investigation of the underlying facts, RLI speculated that the claims were employment-related and denied the defense and indemnity when all it had was the complaints in front of it. RLI's continued denial was without any actual knowledge of the underlying facts, but it still ignored the complaint and asserted that all of the alleged defamatory statements were employment-related. RLI's position spins the duty to defend on its head under an insurance policy. Essentially, RLI asserts that Case and Mr. Perez have the burden of establishing that they, in fact, committed defamatory statements and did them outside of the context of employment when, in fact, their whole position is we didn't do it, but we've been sued for it, so you owe us a defense. As I think everyone knows, the well-established principle is that an insurer has the obligation to establish the applicability of an exclusion under the policy, and that's a burden that RLI has not met and cannot meet, we believe. Here the position is even more troubling, though, because in denying the defense, RLI and initially its counsel ignored the HS Services case and gave us this generalized discussion of what law would apply and left its insurers to fend for themselves. Well, we can say a lot about this case. We do believe that the briefing says nearly everything else and that this case needs to be reversed as to the decision of the district court. In fact, if one reads the decision of the district court, until you get to page 5, frankly, it looked like they were going the way that I think they should have gone, which was to follow HS Services and find a duty to defend. The cases of Loyola, Merrimont, and Frank and Freitas really aren't on point. Those involved employment decisions and employment discussions within the labor or, I'm sorry, within the context of the employer's business. As such, we request, I'm sorry, request the standard that the defamatory statement directly and proximately resolved from the termination is not met. That's the standard of HS Services rather than the alleged. What should the ruling be if you were to prevail? Are you asking for summary judgment in your favor? Well, the case wouldn't end with summary judgment in our favor, Your Honor. You asked for partial summary judgment below, right? I believe partial summary judgment would be appropriate. We did not move forward below. And were you asking for both defense and indemnification or just defense in your motion? Well, that's why the partial summary judgment wouldn't be or full summary judgment would not be applicable because I believe on the duty to indemnify, it's not 100 percent owed. We never argued that. We never got our defense, though. So you're asking for a judgment on the duty to defend? That's correct, Your Honor. Okay. That being stated, we thank the Court for its time, reserve for any questions, and unless you have any at this time, Your Honors. Thank you, counsel. Thank you. Good morning. May it please the Court. Michael Proe of Morrison Knox Holden and Proe for RLY Insurance Company. I think in listening to arguments by appellant, we come across language such as these allegations are wholly unrelated to employment and have nothing to do with employment. And although those rhetorical points may sound good when appellant says them, they in fact do not bear a relation to the actual complaints pled here. In fact, they completely ignore the context of the allegations of these underlying pleadings. I look to simply parse out specific defamation claims. All the defamations are made to according to the affidavit, and we are in some reason. All the statements are made to individuals who are customers or competitors. If I may, Your Honor, because also with respect to both the tender and with respect to the summary judgment papers, there were submitted interrogatory responses by the plaintiffs who also indicate that the day after they were terminated, they were each defamed to the other by their employer, Mr. Perez. And those were submitted with the tender papers. Those were also during the process of evaluation, and they were also in the summary judgment record. Let's take that. Let's just say that is part and parcel of the termination, and it rises out of the employment context. But that wouldn't get you out of your duty to defend, would it, if you had allegations from the complaint and now the interrogatory. Is it a month or two down the road that are to third parties, if those were determined not to be arising out of employment? It would here. And the reason why is because here, in light of these facts and the facts alleged, there is nothing but speculation to break the chain of termination, post-termination defamation, employment-related defamation occurring subsequent to the defamation. Speculation versus inference. The only inference on these papers is that all of these communications arose from the employment relationship. Well, I have a question about that. If you say it's fair to parse these out, you've got allegations of incompetence. Maybe that's employment-related. Thief? Possibly. Drug user? Possibly not. I mean, how do we know? What do we know about the drug user allegations? How do we know those were employment-related or, by comparison, just simply shot out of left field, not relating to drug employment? What we know here is that the only relationship between the parties set forth in these pleadings or set forth in the tender is the relationship of employer-employee. How do we know it's just not hearsay that this pair is picked up? I mean, I don't know where this drug user stuff, it could be employment-related, it could not be employment-related. I'm having trouble figuring out from the record where it belongs. And that's where, if I may, I think that we have a situation where there is speculation that there may be some other relation or some other source of that information, but it's only speculation. We have a complaint that read in its totality, and interrogatory responses and everything else suggest a continuous course of conduct. I mean, that's the only reasonable interpretation of the materials tendered to us, I think, to say. I read it. I don't see how you can say it's the only reasonable one. It says in the complaint that there was damage to business reputation. Correct? But the import of those alleged defamations goes to the professional competence and performance of these individuals. Are you saying that if these comments about a former employee are made for the sole purpose of getting business in the future from other customers, although they've gone into competition, and that your comments have to do with the fact that they were not good employees, they're not trustworthy people, that then you come, then the policy covers you? But if you say to them, well, the whole purpose is to get business, then you're covered by the exclusion. But if you said something that did not relate to their performance of employees, as employees, then you are covered? If I may, because this goes to, I think, the key distinction in our case between HS services and the present policy language, which is the sentence at the end of our exclusion that holds that the capacity in which the insured is sued does not matter for purposes of the application of the exclusion. If the defamation, if the conduct arises out of the termination or arises out of employment-related defamation, and note the broad causal link of arises out of, that this court has itself recognized in continental casualty versus city origin. But in HS, wasn't it also, in your sense of the word employment-related, wasn't the defamation related to the plaintiff's performance as an employee? Well, there are two key distinctions between our case and HS services, which the district court focused on. No, no, I'm just focusing on one particular question, because it seemed to me your theory of employment-related is different from what I had understood employment-related to mean, and that you're saying that if the defamation relates to the performance as an employee, regardless of the context in which it's made, regardless of the purpose for which it's made, regardless of the person to whom it's made, as long as your defamation is limited to the person's performance, then you're all right. What I'm asking you about HNS is, wasn't the defamation there also limited to the person's performance as an employee? But what this court found so important in HS services, and which is completely non-present here, is that in HS services, the discharged employee launched a preemptive attack on the insured. That has nothing to do with the question I asked you, though. I'm not asking you can it be distinguished. I'm saying your theory that if the subject matter of the defamation is the person's performance as an employee, that if you limit your defamation to that, then you come within the exclusion. And I'm saying that is directly contrary to HS services, isn't it? It is not. Because as HS services was interpreting what it felt to qualify for a rising out of termination or a rising out of employment, it focused on was there some break in the causal chain. But that has nothing to do with the question of what is the subject of the defamation. The subject of the defamation was the performance as an employee. Right. That is true. All right. So that's not the question. The question and the issue is, is there a break in the chain? And that goes in HS services to the court's interpretation of whether the arises out of language is satisfied. It is, in fact, part and parcel of the court's holding in HS services. So if somebody gets terminated because they're a liar, a cheat, a thief, an incompetent, and then three years go by and they go into competition with somebody else and they don't even bad mouth the employer, but the employer then comes out and says, you know, to the now people in the competitive market, that guy's a liar, a cheat, incompetent, and all the other things I can think of, that would be a rising out of employment in your view? I think you would look at the facts of each case. And with that case. That's the fact of the one I gave you. Well, no. Well, it's some of the facts. As any hypothetical, it's some of the facts of a case. No, it's the one I gave you. Other than the one we have. It's all I get. Under that hypothetical, I think you would look at what's been provided to the carrier. And if you can't conclude that that followed directly from either the termination or from the employment-related defamation, then I think you may have a potential coverage under a situation like that. How would you decide in that case? Because it's exactly the same except for the passage of time. And I would say it's not exactly the same. And the passage of time is not an inconsequential factor. It's a factor, certainly, as HS Services indicated and other cases, Frank and Freitas. It's a factor to look at the passage of time. Here, we are looking at first one day after the termination. And the interrogatory answer being, you know, each statement. Each statement was made on the following five occasions. So we're looking at statements made the day after termination and then statements made, I believe, a month and a couple of months later. There is just nothing but speculation to break the immediate sequence of termination and termination-related, employment-related defamation. Except that they went into competition with them. That's the only difference. They set up a business and started competing. And to the extent that it mattered whether your conduct was in the context of an employer or the context of a competitor, that would be the holding of HS Services. We do have additional policy language not present in HS Services. This is the capacity? Yes. Whether the insured may be liable as an employer or in any other capacity. Exactly. For the employment-related defamation. Or is that a lurking hand grenade that would defy understanding? Well, to the extent that the language and the exclusion is broad to begin with, if you have any of these claims arising out of termination of employment or arising out of. What does that mean in any other capacity? It doesn't make any difference how much later it is so long as it's somehow employment-related? No, that it wouldn't matter the capacity in which you were being sued. If it's as employer, former employer, competitor, stranger in the marketplace, whatever. And you're telling us the language that I'm now looking at is not in HS? That's correct. It is not in HS Services. And in HS Services, in fact, the capacity was the determinative factor. Tell me again what it means here. I want to hear you tell me again what it means here one more time. It means that if you are sued for a claim arising out of termination or arising out of the employment-related defamation, then the capacity in which you are being sued for that conduct or for that statement is not determinative of coverage. It's simply excluded. Whether the person suing you is suing you as employer, former employer, competitor, whatever. These claims are categorically excluded. Claims arising out of the employment. Do you have any case where the capacity language has been construed, whether in this context or any other context? I am not aware of a case where that specific provision was construed. Because I have to tell you when I read that, it didn't pop into my head what you just said, okay? That's why I asked him to repeat it. So I was trying to figure this out because I read it the first time and I said, hmm, I wonder what that means. And I was trying to fit it in the context of this case and I was thinking more in terms of legal capacity as opposed to cause of action, nature of cause of action or the underlying cause of action. So that's why I was having some trouble trying to fit it into this situation. But I think I understand your argument is the capacity means, you know, what capacity you supposedly did the wrongdoing. Right. And that's how it's worded, liable as employer or in any other capacity. How do you know that the HS services case, that the policy didn't contain that language? It's simply it's not quoted when the policy language is quoted. Is it possible? Well, that may be because maybe nobody would have thought that was relevant until you thought up that theory. But you don't know that it wasn't in the policy. All we have for the holding of a published decision is what's in the published decision. Well, if your answer wasn't no, it wasn't in the policy. I don't know whether it was in the policy. The court didn't find it significant. It's nowhere quoted in the published decision is all I can tell you. It was present in the policy language in Frank and Frieda's, again, just as it's quoted. So how would you get held liable if we were to, I mean, I shouldn't say held liable. What would spawn the duty to defend if we were to accept your definition of capacity? It seems like basically no matter when you're sued, when or how or what, so long as you can link it back to information that was a source of your termination, you don't get coverage. I wouldn't necessarily say it goes that broadly because it doesn't have to in this case. I think if the facts you are presented are all consistent with the fact that these alleged defamations relate to termination or relate to employment-related acts, including defamation, then our exclusion applies. I don't think we need a broad pronouncement beyond this case. It's just that's the way the exclusion applies. This is obviously a contract. It's not a common law of insurance beyond the contract. And this contract evidences an intent that these — The contract would construe strictly against you, particularly the exclusion clause. That is a general principle true. However, where a broad language is used in an exclusionary clause, it can be given broad effect. That's the California Supreme Court. But when it's not entirely clear, it's construed strictly against you. If it's not entirely clear, exclusions are read narrowly. That is true. That's a general tenet of construction. I think here in this case, we have an exclusion that shows an intent not to cover these employment-related and post-employment disputes. If you go back to the H&S case, I guess the last part of the description of what arises out of means that it's — it was a part of or directly and proximately resulted from the termination. And you would say that but for the termination, they wouldn't have made these comments. So you wouldn't even need capacity if you read this the way you'd like us to read it. And there are two separate prongs there in HHS services. There's obviously part two of the exclusion arises out of termination. Part three arises out of employment-related practices and acts that include defamation. And there's a slightly different articulation for part three. They're both satisfied in a case such as this. But where, again, if there were something out there, and certainly the letters ask for any additional information the insured may have, any additional facts, which would presumably be within his ability to provide. If there was anything out there suggesting some relationship other than employment, some source of information other than employment, some purpose to these statements, other than to address the professional competence and or integrity of these employees, that's simply left to speculation. And we don't think a duty to defend can be premised on that. If I can. Thank you, counsel. You're way over time. I am. Due to our questions. I appreciate that. There obviously is a second basis I couldn't get to in 10 minutes with the act of questioning the breach of contract exclusion. We don't waive that by not raising it. No, no. We know there's breach of contract. Thank you. Thank you. Yes. You have time left. Does the Court have any specific topics you'd like me to address? Well, I guess you could comment briefly on capacity, if you'd like. Well, Your Honor, the capacity issue is an interesting one, and I have to agree, not just because it's in my client's interest. It's a hand grenade. I mean, I don't believe that it applies here anyway. I think that the context that you're looking for in this circumstance is where you have an employer who's an individual, and the best example would be you've been sued as an individual and as the employer for an assault and battery on the job. We see this come up in a construction context or that sort of issue. And I've had cases like that, not in the context of this exclusion. This exclusion was meant to take care of employment practices. HS Services is talking about that. These folks were fighting with each other. And I think to focus this case back – pardon me. I'm sorry. The Stairs and the Gokvadox, Perez and Pace, in a commercial context, fighting with each other to get customers, to get customers. The fact that there was a statement made between the two plaintiffs in this case, allegedly made by Mr. Perez, that defamed each of them to the other. Precisely what was the context? What provoked Perez to say that? Well, first of all, I have to go with allegations, Your Honor. Okay. They were – the context that we're talking about was one talking each to the other said, I don't like either one of you. This is how I understand the context of this. I didn't defend the underlying case. And I'm speculating now, which is where I want to end up here. The point of it is that the statements that were made, whatever they were, were about the other person. H&S says the purpose of the statements had nothing to do with employer relationships. It was simply intended to blast a competitor in the marketplace. Right. So they saw a complete rupture between the employment relationship and what's going on now. And it seems that's different than what we're dealing with here. Not at all, Your Honor. In my view, the fact that there was the beginning of a disagreement and a dislike for these now former employees the day after their termination, when they left to go form their own business in competition with their former employer. Did Harris call up the other people and just simply say, I just want to tell you this, or was there an inquiry? I don't know, Your Honor. I don't know. What I do know is that six months later, four months later, there were statements allegedly made to competitors. There's no dispute that they were competitors. And most importantly about this case, in my view, is the issue of speculation, because that's what's wrong with the decision that you have before you. The issue here is the speculation of the parties, and the speculation of the court as to whether there was sufficient evidence to invoke this exclusion is what turns the duty to defend on its head. Do you see the liar, thief, incompetent, and drug user as just one related package? Not necessarily, no. I mean, I think that they are separate statements about what these people did. And I think that, for example. And what they did arose out of their employment, correct? Well, what they did was known. Yes or no? Arose out of, I wouldn't agree with. That's why I'm saying no. Okay. What they did was known to Mr. Perez, and he knew it in the context of being their employer. But I don't know whether it was in their employment. It didn't matter whether it was? In H&S, didn't it arise out of their employment? In H&S, it arose out of their employment. I believe it's irrelevant to the holding of H&S that would rule in my client's favor. I mean, the odd thing about H&S is they say, well, yes, it does literally arise out of employment. But then we think the chain was broken because of the former employee kind of. The purpose. Started the fire war. Correct. And the purpose, though, it's not that so much, as I understand it, just the purpose of the statements is what really we look at. And the acts, in Frank and Freda's and Loyola Maramont cases, they were talking about to their employees what their corporate practices were going to be and how to address the termination of this employment. Don't tell so-and-so about this. He was a bad guy, but don't tell anybody. Or do tell people. And so it was an internal, more of an internal defamation. In the competitor context, which is what H&S Services is, and exactly what we have here, as pleaded in the complaint, that's the only information RLI needed to consider to say, I owe you a duty to defend. Anything else would be speculation, and we'll sort that out on the duty to indemnify. As I understand it, H&S, and your argument is H&S is, in the case of Bench, the defamation is not clearly employment-related because, although its content is directed to Cade's employment, the statements were not made in the context of Cade's employment. That's our position. Your argument is that it has to be not only a remark related to content of employment, but it also has to be in the context of the employment. I believe that's correct, Your Honor. And because it was outside the context of employment, the exclusion simply does not apply. You never get there. The basis of the lawsuits was wrongful termination. No, Your Honor. The basis of the lawsuits was wrongful termination and included defamations made after the termination to competitors, and that's specifically in the lawsuit. The district court said that the context was the wrongful termination. And, Your Honor, I respectfully disagree with the district court, which is why we're here this morning. So it was one of eight claims. Correct. Correct, Your Honor. That's the point. And if Mr. Buss gets a defense for his defamation, for the alleged defamation out of a 27 in Buss v. Superior Court, gets a defense for his alleged defamation when there are 32 causes of action and most of it was contractual obligations and only contractual obligations, Mr. Perez deserves no less. Thank you, counsel. The case just argued will be submitted. The next case on the calendar is for oral argument. It's ECAL v. United Insurance. Good morning. May it please the Court. Connie Shugaring appears.
judges: Reinhardt, Trott, McKeown